IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| COLSTRIP ENERGY LP,<br><br>Plaintiff,<br><br>vs.<br><br>JBED VENTURES, LLC d/b/a/<br>CENTURY TURBINE REPAIR, LLC,<br><br>Defendant. | CV 18-138-BLG-SPW-TJC<br><br>**FINDINGS AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE** |

Plaintiff Colstrip Energy, LP ("Colstrip") filed this action against Defendant JBED Ventures, LLC, doing business as Century Turbine Repair, LLC ("JBED"), alleging negligence for improperly performing repairs to a steam turbine used by Colstrip at the Rosebud Power Plant near Colstrip, Montana.

Presently before the Court is JBED's Motion to Dismiss the Amended Complaint for Lack of Personal Jurisdiction.[1]  (Doc. 23.)

Having considered the parties' arguments, the Court **RECOMMENDS** JBED's Motion to Dismiss for Lack of Personal Jurisdiction be **GRANTED**.

---

[1] JBED initially filed a Motion to Dismiss for Lack of Jurisdiction on September 21, 2018.  (Doc. 5.)  Subsequently, on October 12, 2018 Colstrip filed an Amended Complaint (Doc. 22), thereby mooting JBED's initial Motion to Dismiss. Accordingly, JBED's September 21, 2018 Motion to Dismiss (Doc. 5) is **DENIED as moot**.

1

I.     **FACTUAL BACKGROUND**

"In ruling on a motion to dismiss for lack of personal jurisdiction, a court may consider declarations, discovery materials, and uncontroverted allegations in the complaint." *Nationwide Agribusiness Ins. Co. v. Buhler Barth GmbH*, 2015 WL 6689572, *3 (E.D. Cal. Oct. 30, 2015) (citing *ADO Fin., AG v. McDonnell Douglas Corp.*, 931 F. Supp. 711, 714 (C.D. Cal. 1996)).  Therefore, for purposes of the instant motion, the Court accepts as true the uncontroverted facts from Colstrip's Complaint.  *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004).

Colstrip is a Montana Limited Partnership with its principal place of business in Rosebud County, Montana.  (Doc. 22 at ¶ 1.)  Colstrip owns and operates a waste coal-fired plant near Colstrip, Montana.  *Id.*

JBED is a Missouri Limited Liability Company with its principal place of business in Missouri.  (*Id.* at ¶ 2.)  JBED is a contractor that provides turbine parts and repair services to power plants.  (*Id.*)  JBED was previously organized under the name Century Turbine Repair, LLC.  (Doc. 24-1 at ¶¶ 7-8.)  JBED does not have facilities, property, or employees in Montana.  (*Id.* at ¶¶ 11-12.)  JBED also has not provided, advertised or entered into contracts for repair services in Montana.  (*Id.* at ¶ 10.)

2

In June 2011, Colstrip entered into a Services Agreement with Turbine Generator Maintenance, Inc. ("TGM") to inspect and repair Colstrip's 41.5 MVA Alstom steam turbine (the "turbine"). (Doc. 22 ¶ 5.) TGM is a Florida company. (Doc. 24-1 at ¶ 13.) The following month, TGM entered into an agreement with JBED to repair the turbine's rotor. (Doc. 22 at ¶ 6; Doc. 24-1 at ¶ 13.) TGM was originally scheduled to complete the work at the Rosebud Power Plant in Montana, but pursuant to a change order, the turbine's rotor was shipped to JBED's facilities in Missouri for repairs. (Doc. 22 at ¶¶ 5-6.) JBED removed and replaced the erosion shields on the rotor. (*Id*. at ¶ 8.) After completing the repairs, JBED sent the rotor back to the Rosebud Power Plant where it was installed in the turbine. (*Id*. at ¶ 9.) Approximately six years later, the turbine was substantially damaged after one of the low-pressure blades failed within the turbine. (*Id*. at ¶¶ 10-11, 14.) Colstrip alleges the failure occurred as a result of JBED's work. (*Id*. at ¶ 11.)

Colstrip filed a negligence suit in state court on August 17, 2018, and the case was removed to this Court on September 14, 2018. (Doc. 1.) Thereafter, JBED filed the instant motion. (Doc. 23.)

## II. DISCUSSION

JBED seeks dismissal of the Amended Complaint for lack of personal jurisdiction. JBED argues Mont. R. Civ. P. 4(b)(1) does not confer general personal jurisdiction over JBED. Additionally, JBED argues Mont. R. Civ. P.

4(b)(1) does not confer specific personal jurisdiction over JBED. JBED also argues exercising specific personal jurisdiction over it would violate due process.

### A. Legal Standard

When a defendant moves to dismiss a claim for lack of personal jurisdiction, the plaintiff bears the burden of proving that personal jurisdiction exists. *Learjet, Inc. v. Oneok, Inc. (In re W. States Wholesale Nat. Gas Antitrust Litig.)*, 715 F.3d 716, 741 (9th Cir. 2013) (internal citations omitted). Where the motion is based on written materials rather than an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts. *Schwarzenegger*, 374 F.3d at 800. A court's duty is to inquire into whether the plaintiff's pleadings and affidavits make a prima facie showing of personal jurisdiction, accepting the plaintiff's allegations as true. *Id.* Although the plaintiff cannot simply rest on the bare allegations of its complaint, uncontroverted allegations in the complaint must be taken as true. Conflicts between the parties over statements contained in affidavits must be resolved in the plaintiff's favor. *Id.*

To exercise personal jurisdiction over a non-resident defendant in a diversity case, a federal court must make the following determinations: (1) whether an applicable state rule or statute confers personal jurisdiction over the defendant; and (2) whether assertion of jurisdiction comports with constitutional principles of due process. *Data Disc Inc. v. Systems Tech. Assocs., Inc.*, 557 F.2d 1280, 1286 (9th

Cir. 1977). With respect to the first inquiry, this Court is bound to look to Montana law. *Haywood v. Travelers Indem. Co. of Am.*, 2006 WL 2860588, at *2 (D. Mont. October 3, 2016).

The Montana Supreme Court has articulated a similar two-part test to determine the existence of personal jurisdiction: (1) the court must ascertain whether personal jurisdiction exists pursuant to Montana Rule of Civil Procedure 4(b)(1), Montana's long-arm statute; and (2) the court must assess whether asserting such jurisdiction is consistent with "traditional notions of fair play and substantial justice embodied in the due process clause." *Cimmaron Corp. v. Smith*, 67 P.3d 258, 260 (Mont. 2003) (*citing Threlkeld v. Colorado*, 16 P.3d 359, 361 (Mont. 2000)); *See also Simmons Oil Corp. v. Holly Corp.*, 796 P.2d 189, 193 (Mont. 1990).

Montana's long-arm statute provides in relevant part:

> All persons found within the state of Montana are subject to the jurisdiction of Montana courts. Additionally, any person is subject to the jurisdiction of Montana courts as to any claim for relief arising from the doing personally, or through an employee or agent, of any of the following acts:
>
> . . .
>
> (A)  the transaction of any business within this state;
> (B)  the commission of any act resulting in accrual within Montana or a tort action; [or]
> (E)  entering into a contract for services to be rendered or for materials to be furnished in Montana by such person[.]

Mont. R. Civ. P. 4(b)(1)(A)-(B), (E).

The first sentence of Rule 4(b)(1) establishes the requirements for general jurisdiction. *Cimmaron Corp.*, 67 P.3d at 260 (*citing Bi-Lo Foods Inc. v. Alpine Bank, Clifton*, 955 P.2d 154, 157 (Mont. 1998)). "A court with general jurisdiction may hear *any* claim against that defendant, even if all the incidents underlying the claim occurred in a different state." *Bristol-Myers Squibb Co. v. Sup. Ct. of Cal.*, 137 S.Ct. 1773, 1780 (2017) (emphasis in original).

The remainder of Rule 4(b)(1) establishes the requirements for specific jurisdiction. *Cimarron Corp.*, 67 P.3d at 260. In contrast to general jurisdiction, specific jurisdiction is more limited, and requires the controversy be directly related to the defendant's contacts with the forum. *Bristol-Myers*, 137 S.Ct. at 1780.

If the Court finds it may exercise specific jurisdiction under Mont. R. Civ. P. 4(b)(1), it must next determine whether such exercise is commensurate with the defendant's due process rights under federal law. *Bedrejo v. Triple E Can. Ltd.*, 984 P.2d 739, 742 (Mont. 1999) (*citing Simmons v. State*, 670 P.2d 1372, 1376–77 (Mont. 1983); *Grizzly Sec. Armored Express, Inc. v. Armored Group, LLC*, 255 P.3d 143, 149 (Mont. 2011)).

The Ninth Circuit has developed the following three-part test to assess whether a defendant has sufficient contacts with the forum state to be subject to specific jurisdiction:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Schwarzenegger*, 374 F.3d at 802.[2] "The plaintiff bears the burden of satisfying the first two prongs of the test. If the plaintiff fails to satisfy either of these prongs, personal jurisdiction is not established in the forum state." *Id.* (internal citations omitted).

### B. General Jurisdiction

JBED asserts the Court may not exercise general jurisdiction because JBED is not "found within" Montana. JBED is a corporation with its principal place of business in Jefferson County, Missouri. (Doc. 24-1 ¶ 9.) JBED does not have any office, facility, employees, or property in Montana. (*Id*. at ¶¶ 10-12.) Colstrip does not dispute that there is no basis for asserting general jurisdiction over JBED. Accordingly, the Court may not exercise general jurisdiction over JBED.

///

---

[2] The Montana Supreme Court adopted this approach in *Simmons Oil Corp*, 670 P.2d at 1378.

### C.     Specific Jurisdiction

JBED further contends it is not subject to specific personal jurisdiction. JBED argues its conduct did not result in a tort that accrued in Montana. JBED further argues it did not transact business in Montana or enter into a contract for services in Montana. Colstrip counters that JBED is subject to specific jurisdiction because its tortious conduct resulted in an injury in Montana, and because JBED entered into a contract for services in Montana.

> a.     <u>JBED is Not Subject to Specific Jurisdiction Under Mont. R. Civ. P. 4(b)(1)(B)</u>

Specific jurisdiction may be exercised over a person who commits an act that results in the accrual of a tort action within Montana. Mont. R. Civ. P. 4(b)(1)(B). In assessing whether a claim accrued in Montana under Rule 4(b)(1)(B), the court must focus "on where the events giving rise to the tort claims occurred, rather than where the plaintiffs allegedly experienced or learned of their injuries." *Tackett v. Duncan*, 334 P.3d 920, 928 (Mont. 2014). "A tort does not accrue in Montana when all acts giving rise to the claims occur in another state." *Milky Whey, Inc. v. Dairy Partners, LLC*, 342 P.3d 13, 18 (Mont. 2015). Further, the mere injury to a Montana resident is not a sufficient connection to the forum, *Tackett*, 334 P.3d at 929; the "focus must be on the place where the services are rendered." *McGee v. Riekhof*, 442 F. Supp. 1276, 1278 n.1 (D. Mont. 1978). *See also Cimmaron*, 67 P.3d at 261-62 (holding the fact the plaintiff was detrimentally

affected within Montana by the defendant's actions in Pennsylvania was not sufficient to establish the accrual of a tort action within Montana); *Bird v. Hiller*, 892 P.2d 931, 934 (Mont. 1995) (stating Rule 4(b)(1)(B) jurisdiction "is not acquired through interstate communications pursuant to a contract to be performed in another state."); *Threlkeld*, 16 P.3d at 365 (finding the court lacked personal jurisdiction over the defendants where the plaintiffs' tort claims related entirely to services to be performed in Colorado); *Bi-Lo Foods, Inc. v. Alpine Bank, Clifton*, 955 P.2d 154, 159 (Mont. 1998) (holding the defendant's activities did not result in the accrual of a tort in Montana where all acts giving rise to the plaintiff's claims of negligence and breach of warranty occurred in Colorado).

Here, the pertinent action that gave rise to Plaintiff's negligence claim against JBED occurred in Missouri. JBED entered into a subcontract with TGM to perform certain repairs to the turbine's rotor. All of JBED's repair work under the subcontract took place at its Missouri shop. There is no evidence that JBED performed any work in Montana. Further, the specific injury-causing event – the alleged failure "to properly control and monitor the heat during its brazing work when installing the new erosion shields on the turbine rotor blades" – occurred in Missouri. (Doc. 22 at ¶ 17.) The fact Colstrip felt the injury in Montana six years later is insufficient to connect JBED to Montana. *See Milky Whey*, 342 P.3d at 18 (holding a tort does not accrue in Montana where "tortious activity was committed

9

outside the forum state but where the resulting injury was experienced in the forum state.")

Because the allegedly faulty repair giving rise to Colstrip's negligence claim occurred in Missouri, JBED's actions did not result in the accrual of a tort action within Montana for purposes of Rule 4(b)(1)(B).

>    b. JBED is Not Subject to Specific Personal Jurisdiction Under Mont. R. Civ. P. 4(b)(1)(A) & (E)

Specific personal jurisdiction may be established if the claim for relief arises from the "transaction of any business within Montana." Mont. R. Civ. P. 4(b)(1)(A). Additionally, persons are subject to Montana jurisdiction by "entering into a contract for services to be rendered or for materials to be furnished in Montana by such person." Mont. R. Civ. P. 4(b)(1)(E). The exercise of personal jurisdiction is proper under Rule 4(b)(1)(A) "where substantial interactions occur in Montana." *Milky Whey*, 342 P.3d at 19. But merely entering into a contract with a Montana resident does not automatically constitute a substantial interaction which subjects a non-resident to Montana jurisdiction. *Cimmaron*, 67 P.3d at 261; *Edsall*, 804 P.2d at 1042 (1991).

Here, JBED did not enter into any contract with Colstrip or any Montana resident to provide services or materials to Montana. Nor did JBED transact business in Montana. Rather, JBED entered into a subcontract with TGM, a Florida company, and performed all work under the subcontract in Missouri.

JBED has never provided, advertised, or entered into any service agreements for repair services in Montana; it has no physical presence in Montana; and it does not have any employees in Montana. (Doc. 24-1 at ¶¶ 9-12.) Accordingly, it appears JBED has done nothing to reach into Montana or avail itself of the privilege of doing business in the state.

Colstrip cites *Grizzly Sec. Armored Express, Inc. v. Armored Grp.*, 255 P.3d 143 (Mont. 2011) for the proposition that personal jurisdiction may be asserted over a nonresident business who knowingly ships products to a Montana business for use in Montana. *Grizzly*, however, is distinguishable from the facts of this case. In *Grizzly*, the out-of-state defendant advertised that they serviced vehicles in Montana; it directly sold multiple vehicles to the plaintiff through various contracts; and it worked with other Montana businesses in servicing the purchased vehicles. *Grizzly*, 255 P.3d at 149. In contrast, here, JBED had no direct contractual relationship with Colstrip. Instead, JBED worked on the rotor pursuant to the subcontract with TGM. The only action that arguably connected JBED to Montana was the shipment of the rotor between Montana and Missouri. However, the shipment was also done pursuant to the subcontract between JBED and TGM. Aside from the sole action of shipping the rotor, it does not appear JBED had any direct interactions with Colstrip or any other Montana businesses. As such, the

Court finds JBED is not subject to personal jurisdiction in Montana under Rule 4(b)(1)(A) or (E).

Because the Court finds jurisdiction does not exist under Montana's long-arm statute, the Court may not exercise specific jurisdiction over JBED. *Cimmaron*, 67 P.3d at 260 (stating that if personal jurisdiction does not exist under Rule 4(b)(1), further analysis of whether the exercise of personal jurisdiction comports with due process is unnecessary); *Bi-Lo Foods, Inc.*, 955 P.2d at 159 ("[S]ince we have determined that [the defendant] has not engaged in any of the several activities enumerated in our specific long-arm jurisdiction statute, our analysis ends here and we have no authority to exercise jurisdiction").

## III.  CONCLUSION

Based on the foregoing, **IT IS RECOMMENDED** that JBED's Motion to Dismiss Amended Complaint for Lack of Personal Jurisdiction (Doc. 23) be **GRANTED**.

**NOW, THEREFORE, IT IS ORDERED** that the Clerk shall serve a copy of the Findings and Recommendations of United States Magistrate Judge upon the parties. The parties are advised that pursuant to 28 U.S.C. § 636, any objections to the findings and recommendations must be filed with the Clerk of Court and copies served on opposing counsel within fourteen (14) days after service hereof, or

/ / /

objection is waived.

**IT IS ORDERED**.

DATED this 8th day of July, 2019.

_____
TIMOTHY J. CAVAN
United States Magistrate Judge