
FILED
SEP 3 0 2019
Clerk, U S District Court
District Of Montana
Billings

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MONTANA
# BILLINGS DIVISION

| | |
|---|---|
| COLSTRIP ENERGY LP,<br><br>Plaintiff,<br><br>vs.<br><br>JBED VENTURES, LLC d/b/a<br>CENTURY TURBINE REPAIR, LLC,<br><br>Defendant. | CV 18-138-BLG-SPW<br><br>ORDER DECLINING TO ADOPT THE MAGISTRATE'S FINDINGS AND RECOMMENDATIONS IN FULL AND DENYING DEFENDANT'S MOTION TO DISMISS |

On October 26, 2018, defendant JBED Ventures, LLC (JBED) filed a motion to dismiss Colstrip Energy LP's (Colstrip) amended complaint for lack of personal jurisdiction. (Doc. 23.) On July 8, 2019, Judge Cavan issued findings and recommendations (Doc. 28) and recommended this Court grant JBED's motion. (Doc. 28 at 12.) Colstrip timely filed objections to the findings and recommendations. (Doc. 29.) JBED then timely filed a reply on August 5, 2019. (Doc. 30.) The Court disagrees with Judge Cavan's recommendation. For the following reasons, JBED's motion to dismiss for lack of personal jurisdiction is

1

denied.[1]

## I. Background

Colstrip is a Montana limited partnership with its principal place of business in Rosebud County, Montana. (Doc. 22 at ¶ 1.) It owns and operates a waste coal-fired power plant near Colstrip, Montana. (*Id.*)

JBED is a Missouri limited liability company with its principal place of business in Missouri. (*Id.* at ¶ 2.) JBED does not have facilities, property, or employees in Montana, and it has not provided, advertised, or entered into contracts for services in Montana. (Doc. 24-1 at ¶¶ 10–12.) JBED is a contractor that provides turbine parts and repair services to power plants. (Doc. 22 at ¶ 2.)

In June 2011, Colstrip entered into a contract with Turbine Generator Maintenance, Inc. (TGM), a Florida company (Doc. 24-1 at ¶ 13), to inspect and repair a rotor from one of Colstrip's steam turbines. (Doc. 22 at ¶¶ 5–6.) TGM then entered into a contract with JBED to repair the rotor. (*Id.* at ¶ 6; Doc. 24-1 at ¶ 13.) Although the plan was originally to repair the rotor onsite, pursuant to a change order, the rotor was shipped to JBED's facility in Missouri. (Doc. 22 at ¶ 6.)

---

[1] JBED initially filed a Motion to Dismiss for Lack of Jurisdiction on September 21, 2018. (Doc. 5.) Subsequently, on October 12, 2018, Colstrip filed an Amended Complaint (Doc. 22), thereby mooting JBED's initial Motion to Dismiss. Accordingly, JBED's initial Motion to Dismiss (Doc. 5) is denied as moot.

After completing repairs, JBED shipped the rotor back to Colstrip's Montana facility, where it was installed back in the steam turbine. (*Id.* at ¶ 9.)

In July 2017, one or more of the rotor's low-pressure blades broke loose inside the turbine, causing substantial damage. (*Id.* at ¶¶ 11, 14, 17–18.) Colstrip attributes this failure to JBED's earlier repair work on the rotor. (*Id.* at ¶ 11.) Colstrip alleges JBED was negligent because it failed to properly control and monitor heat during its brazing work when repairing the rotor, which caused the rotor blade base material to slightly soften, introduced harmful residual stresses, and led to the low-pressure blades breaking off and causing the turbine's failure. (*Id.* at ¶¶ 11–12, 14, 17–18.) Colstrip alleges approximately $9,438,996 in damages. (*Id.* at ¶ 19.)

Colstrip filed a negligence suit in Montana state court on August 17, 2018, which JBED removed to this Court. (Doc. 1.) JBED later filed the instant motion to dismiss for lack of personal jurisdiction. (Doc. 23.)

Judge Cavan concluded the Court lacks general and specific personal jurisdiction over JBED under Montana's long-arm statute, Mont. R. Civ. P. 4(b). Specifically, he held that even though the rotor JBED repaired failed in Montana, the specific injury-causing event—which he concluded was JBED's faulty repair—occurred in Missouri. (Doc. 28 at 8–10.) Therefore, he concluded JBED's actions

did not result in the accrual of a tort action within Montana for purposes of conferring personal jurisdiction under Mont. R. Civ. P. 4(b)(1)(B). (*Id.*) Judge Cavan further concluded JBED did not transact any business within Montana or enter into a contract for services to be rendered or for materials to be furnished in Montana because it contracted with TGM, not Colstrip directly. (*Id.* at 10–12.)

Colstrip objects to the Magistrate's conclusion that its injury-causing event did not occur in Montana. It avers the tort of negligence accrued in Montana because the injury-causing event and damages—the rotor failure and damages to Colstrip's turbine—occurred in Montana. (Doc. 29 at 5.) JBED responds that Judge Cavan was correct in concluding the tort did not accrue in Montana because all JBED's repair work on the rotor occurred in Missouri. (Doc. 30 at 9.)

## II. Standard of Review

"When a defendant moves to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that the court has jurisdiction." *In re W. States Wholesale Nat. Gas Antitrust Litig.*, 715 F.3d 716, 741 (9th Cir. 2013). Where the defendant bases its motion on written materials rather than an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). In such cases, the Court only determines whether the plaintiff's pleadings and affidavits

establish a prima facie showing of personal jurisdiction. *Id.* (citing *Caruth v. International Psychoanalytical Ass'n*, 59 F.3d 126, 128 (9th Cir.1995)). The plaintiff cannot "simply rest on the bare allegations of its complaint," but the Court takes the uncontroverted allegations in the complaint as true and resolves conflicts between the parties over statements contained in affidavits in the plaintiff's favor. *Id.* (quoting *Amba Marketing Systems, Inc. v. Jobar International, Inc.*, 551 F.2d 784, 787 (9th Cir.1977)).

Where there is no applicable federal statute governing personal jurisdiction, this Court applies Montana law. *Id.*; *see* Fed. R. Civ. P. 4(k)(1)(A). Montana courts employ a two-part test to determine whether they may exercise personal jurisdiction over a nonresident defendant. *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 443 P.3d 407, 412 (Mont. 2019). First, the Court determines whether personal jurisdiction exists under Montana's long-arm statute, M. R. Civ. P. 4(b)(1). *Id.* If so, then the Court determines "whether exercising personal jurisdiction is constitutional; that is, whether it conforms with 'the traditional notions of fair play and substantial justice embodied in the due process clause.'" *Id.* (quoting *Cimmaron Corp. v. Smith*, 67 P.3d 258, 260 (Mont. 2003)).

### III. Discussion

A. Montana's long-arm statute establishes personal jurisdiction over JBED because JBED committed an act resulting in the accrual of a tort within Montana.

M. R. Civ. P. 4(b)(1) lists several means of establishing jurisdiction over persons not found within the state. Here, Colstrip objects only to Judge Cavan's conclusion that the long-arm statute does not establish personal jurisdiction over JBED because it did not commit an act resulting in the accrual of a tort in Montana. M. R. Civ. P. 4(b)(1)(B) ("[A]ny person is subject to the jurisdiction of Montana courts as to any claim for relief arising from the doing personally, or through an employee or agent, of . . . the commission of any act resulting in accrual within Montana of a tort action . . . .") Specifically, Colstrip objects to Judge Cavan's conclusion that the negligence Colstrip alleges accrued in Missouri, not Montana.

Establishing where a tort accrues is not always an easy task, especially given the facts here. Colstrip alleges JBED received Colstrip's steam turbine rotor in Missouri, made faulty repairs on the rotor, and shipped the rotor back to Colstrip in Montana. (Doc. 22 at ¶¶ 7–14.) Afterwards, the rotor was reinstalled, and due to the faulty repairs, it substantially damaged Colstrip's steam turbine a few years later. (*Id.*) Colstrip alleges that as a direct result of JBED's negligence, it suffered substantial damages to its property and a loss of business income. (*Id.* at ¶ 17–19.) Critically, the question before the Court is at which point in time the alleged

negligence accrued. If it accrued at the moment JBED made faulty repairs, then it accrued in Missouri, and the Court lacks personal jurisdiction over JBED. If it accrued when the rotor failed and damaged Colstrip's steam turbine, then it accrued in Montana, and Montana's long-arm statute is satisfied.

Central to this issue is the location of the "injury-causing event." *Bi-Lo Foods, Inc. v. Alpine Bank, Clifton*, 955 P.2d 154, 157–59 (Mont. 1998). Personal jurisdiction does not exist merely because a person experiences an injury in Montana. *Milky Whey, Inc. v. Dairy Partners, LLC*, 342 P.3d 13, 18 (Mont. 2015). The Court must focus on "where the events giving rise to the tort claims occurred, rather than where the plaintiffs allegedly experienced or learned of their injuries." *Tackett v. Duncan*, 334 P.3d 920 (Mont. 2014).

After reviewing the Montana cases analyzing the subject, the Court finds there are few common applicable themes. For one, a tort does not accrue in Montana merely because the plaintiff experiences the effects of some out-of-state injury-causing event; rather, the injury-causing event must physically manifest in Montana. *See Milky Whey*, 342 P.3d at 17 (assuming claims for breaches of warranties could even sound in tort, holding the alleged torts did not accrue in Montana where negotiation, transfer of money, and transfer of product all occurred outside Montana). For example, where a plaintiff sends funds or other assets to an

7

out-of-state defendant and the defendant refuses to return the property, the resulting tort (i.e., conversion) does not accrue in Montana merely because the plaintiff feels or experiences the effects of the pecuniary loss in Montana. *See Tackett*, 334 P.3d 920 (holding a tort accrued in Florida where a plaintiff transferred funds from a Montana bank account to the Florida defendant and the defendant refused to return them); *Cimmaron Corp. v. Smith*, 67 P.3d 258 (Mont. 2003) (holding a tort accrued in Pennsylvania where a Montana plaintiff transferred accounts receivable to a Pennsylvania collections firm but the firm misappropriated the assets); *Bi-Lo Foods*, 955 P.2d 154 (holding a tort accrued in Colorado where a plaintiff demanded a Colorado defendant return escrow funds located in Colorado and the defendant refused); *Bird v. Hiller*, 892 P.2d 931 (Mont. 1995) (concluding a tort accrued in Idaho where plaintiffs sent settlement checks to Idaho for an Idaho defendant's endorsement and the defendant refused to remit the checks back to Montana).

On the other hand, the injury-causing event can physically manifest in Montana as a result of a defendant's out-of-state activities, even if the defendant never sets foot in the state. *See Ford Motor Co.*, 443 P.3d 407, 413 (Mont. 2019). In these cases, the injury-causing event may take the form of a physical accident or other catastrophe occurring in Montana. *See id.* at 413 n. 1 (holding the torts of design defect, failure to warn, and negligence "undoubtedly accrued" in Montana

where the plaintiff was in an accident in Montana while driving a vehicle the out-of-state defendant manufactured in Kentucky); *Bunch v. Lancair Int'l, Inc.*, 202 P.3d 784, 786, 795 (Mont. 2009) (holding the torts of strict product liability, negligence, and breach of warranty accrued in Montana where the plaintiff crashed an aircraft in Montana that the out-of-state defendant manufactured in Oregon).

Moreover, the Court needs to look no further than the statutory language itself to demonstrate that the injury-causing event and the defendant's act resulting in the accrual of a tort in Montana may be separate events. The statute confers jurisdiction for "the commission of any act *resulting* in accrual within Montana of a tort action"; it does not confer jurisdiction only where the defendant commits *a tort* in Montana. Mont. R. Civ. P. 4(b)(1)(B) (emphasis added).

This case is far more similar to the latter line of cases above. The specific injury Colstrip alleges is the substantial damage to its steam turbine. (Doc. 22 at ¶¶ 10, 14, 18–19.) Colstrip alleges the event that caused that damage was the failure of a rotor JBED made faulty repairs to. (*Id.*) Colstrip's negligence claim did not accrue, then, until the rotor failed and damaged its turbine. Notably, Colstrip is not seeking damages solely to replace the rotor or remedy the faulty repair, in which

case the injury-causing event could arguably be JBED's faulty repair in Missouri.[2] The damages it seeks stem directly from the rotor's failure and the substantial damages the rotor caused Colstrip's property in Montana. Colstrip's complaint, then, speaks to JBED's "commission of any act" (the faulty repair) "resulting" (the rotor's failure) "in accrual within Montana of a tort action" (negligence). *See* Mont. R. Civ. P. 4(b)(1)(B). The rotor's failure in Montana was the injury-causing event, and Colstrip's negligence claim therefore accrued in Montana.

JBED argues *Ford Motor Co.*, *Bunch*, and similar cases are distinguishable because they involve claims against manufacturers arising from allegedly defective products placed into the stream of commerce. But the fact that product defect claims are often a common thread among cases where a defendant's out-of-state actions lead to an injury-causing event in Montana does not make such claims a requirement (and the Montana Supreme Court has never held that to be the case). It is simply the nature of these types of cases that their similar facts and circumstances often involve products liability. Rarely would the Court expect to see, as here, a

---

[2] Even still, if Colstrip had sought only to remedy the faulty repair, there is a counter argument that the injury-causing event was JBED's delivery of the rotor to Montana. In *Brunner v. Bawcom*, another division of this Court held a tort accrued in Montana when a defendant delivered a defective vehicle to the plaintiff in Montana that did not meet agreed-upon specifications. 2010 WL 3724436, at *3 (D. Mont. 2010). The court concluded the tort accrued at the point of delivery because that was when the damages accrued.

plaintiff shipping its own property out of state for repairs only to have the defendant defectively repair the property, return it, and to have the defective property later cause injuries. It appears that a plaintiff shipping its property out-of-state is far more vulnerable to a tort like conversion, where the injury-causing event would be the defendant's misappropriation of the property. *See, e.g., Tackett*, 334 P.3d 920; *Cimmaron*, 67 P.3d 258; *Bi-Lo Foods*, 955 P.2d 154; *Bird*, 892 P.2d 931.

The cases JBED cites support this notion. None of these cases hold that defective product or design claims are the only torts that can accrue in Montana where a defendant's out-of-state actions lead to an injury-causing event in Montana; instead, they each uphold personal jurisdiction because a tort based on a product defect accrued in Montana. *See Scanlan v. Norma Projektil Fabrik*, 345 F.Supp. 292 (D. Mont. 1972); *Bullard v. Rhodes Pharmacal Co.*, 263 F. Supp. 79, 82 (D. Mont. 1967); *Hartung v. Washington Iron Works*, 267 F.Supp. 408 (D. Mont. 1964).

In *Rodoni v. Royal Outdoor Prods., Inc.*, 2019 WL 2300400, at *2 (D. Mont. May 30, 2019), another division of this Court explained that in the context of a design defect, the location of the injury-causing event is not the place where the product was designed, "For not all defectively designed products will fail and cause injury to consumers." Granted, tort accrual is far clearer in the context of products liability because "A plaintiff has no cause of action in strict products liability prior

to her injury." *Id.* However, once again, the damages Colstrip alleges in its negligence claim are not the cost of repairing the faulty rotor. The defective rotor could have continued functioning in spite of JBED's alleged faulty repairs—it did not have to "fail and cause injury" to Colstrip. But it did. The Court looks to the specifics of Colstrip's claim: Colstrip alleges JBED's negligence resulted in the rotor's failure, which directly caused substantial damage to Colstrip's turbine in Montana. (Doc. 22 at ¶¶ 17–19.) Colstrip's negligence claim accrued in Montana. *See also Ford Motor Co.*, 443 P.3d at 413 n. 1. Accordingly, Montana's long-arm statute confers personal jurisdiction.

> B. Exercising personal jurisdiction over JBED also comports with the Due Process Clause.

"For a court to exercise personal jurisdiction over a nonresident defendant, that defendant must have at least 'minimum contacts' with the relevant forum such that the exercise of jurisdiction 'does not offend traditional notions of fair play and substantial justice.'" *Schwarzenegger*, 374 F.3d at 801 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). In the context of specific jurisdiction, the "minimum contacts" requirement depends on the satisfaction of the following criteria:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or

perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
(2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
(3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Id.* at 802. The plaintiff bears the burden of satisfying the first two prongs of the test. If the plaintiff successfully does so, "the burden then shifts to the defendant to 'present a compelling case' that the exercise of jurisdiction would not be reasonable." *Id.* (citing and quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476–78 (1985)).

Therefore, Colstrip must first show JBED purposefully availed itself of the privilege of conducting activities in Montana. "This purposeful availment requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or a third person." *Burger King*, 471 U.S. at 475 (internal quotations and citations removed).

As JBED points out, purposeful availment and purposeful direction are distinct concepts. *Schwarzenegger*, 374 F.3d at 802. Purposeful availment sounds in contract disputes; purposeful direction sounds in tort cases. *Id.* "A showing that a defendant purposefully directed his conduct toward a forum state . . . consists of

13

evidence of the defendant's actions outside the forum state that are directed at the forum...." *Id.* at 803. A plaintiff may show a defendant purposefully directed activities at a forum, even in the "absence of physical contacts" with the forum. *Burger King*, 471 U.S. at 476. Even a single contact with the forum may support personal jurisdiction so long as the cause of action arose out of it. *Lake v. Lake*, 817 F.2d 1416, 1423 (9th Cir. 1987) (citing *McGee v. International Life Ins. Co.*, 355 U.S. 220, 223 (1957)); *see In re W. States Wholesale Nat. Gas Antitrust Litig.*, 715 F.3d at 742.

There is no question the present cause of action arose from JBED's contact with Montana. Colstrip's complaint alleges JBED knew the rotor it performed repairs on originated from Colstrip's Montana facility. (Doc. 22 at ¶ 6.) After completing the repairs, JBED shipped the rotor back to the Montana facility. (*Id.* at ¶ 7.) This is not an instance of a "random, fortuitous, or attenuated" contact—JBED deliberately directed its repairs and shipment to a Montana resident.[3] *See Burger King*, 471 U.S. at 475. Colstrip's present cause of action later arose out of that conduct: for reasons the Court explained above, Colstrip's negligence claim

---

[3] JBED argues its conduct was not expressly aimed at Montana because it only performed the repairs pursuant to a contract between it and TGM, a Florida corporation. However, JBED provides no legal support for this argument. The Court finds JBED's status as a subcontractor has no effect on the purposeful direction and minimum contacts analyses, especially where Colstrip alleges JBED knew Colstrip owned the rotor and JBED shipped it back to Montana.

14

accrued when the rotor allegedly failed and substantially damaged Colstrip's steam turbine. Accordingly, Colstrip has satisfied the first two prongs of the due process test, and the burden now shifts to JBED to present a compelling case that the exercise of jurisdiction would not be reasonable. *See Schwarzenegger*, 374 F.3d at 802.

The Ninth Circuit balances seven factors for the final prong, the reasonableness inquiry:

(1) the extent of the defendant's purposeful interjection into the forum state,
(2) the burden on the defendant in defending in the forum,
(3) the extent of the conflict with the sovereignty of the defendant's state,
(4) the forum state's interest in adjudicating the dispute,
(5) the most efficient judicial resolution of the controversy,
(6) the importance of the forum to the plaintiff's interest in convenient and effective relief, and
(7) the existence of an alternative forum.

*Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*, 223 F.3d 1082, 1088 (9th Cir. 2000). The factors are not each mandatory tests Colstrip must pass in order for the Court to assume jurisdiction. "Instead, the factors illuminate the considerations of fairness and due process set forth in [*Int'l Shoe Co.*, 326 U.S. 310]." *Gates Learjet Corp. v. Jensen*, 743 F.2d 1325, 1332 (9th Cir. 1984) (quoting *Hedrick v. Daiko Shoji Co., Ltd., Osaka*, 715 F.2d 1355, 1359 (9th Cir. 1983)). The Court considers each factor in turn.

First, JBED explains it has never contacted Colstrip nor any Montana citizen

to conduct turbine repairs, it has no property or employees in Montana, it has never conducted repairs of turbine equipment within Montana, and it only agreed to repair Colstrip's rotor and ship it to Montana due to its agreement with TGM. While these facts certainly limit the extent of JBED's purposeful interjection into Montana, its one purposeful interjection led to the accrual of a tort and is therefore sufficient to satisfy this first factor, which weighs in favor of establishing jurisdiction.

Second, JBED, as a Missouri corporation, would be burdened by having to defend the instant dispute in Montana. However, courts also compare the burden on the defendant to that on the plaintiff if the plaintiff had to bring its suit in the defendant's home jurisdiction. *See Raffaele v. Compagnie Generale Mar., S.A.*, 707 F.2d 395, 398 (9th Cir. 1983) (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980)). Colstrip and JBED are both corporations incorporated in the United States. The burden on Colstrip having to prosecute this case in Missouri is similar to the burden on JBED having to defend it in Montana. Nonetheless, "Progress in communication and transportation has reduced many of the historic burdens of defending litigation in a foreign tribunal." *Id.* The burden on JBED defending in Montana does not negate the reasonableness of personal jurisdiction here.

Third, there is not a strong conflict here with Missouri's sovereignty.

Typically, this issue is most acute where the alternative jurisdiction is a foreign country. *See id.*; *Timberlane Lumber Co. v. Bank of Am., N.T. & S.A.*, 549 F.2d 597, 607 (9th Cir. 1976). "A foreign nation presents a higher sovereignty barrier than that between two states within our union." *Gates Learjet*, 743 F.2d at 1333. Missouri has not, for example, expressed "a substantially stronger sovereignty interest" for assuming than Montana. *See Raffaele*, 707 F.2d at 398. Therefore, this factor does not undermine the reasonableness of personal jurisdiction in this case.

Fourth, Montana has a clear interest in litigating Colstrip's claims. Montana has a strong interest in ensuring its citizens are fully compensated for their injuries, in part to protect the state's economic resources. *See Gates Learjet*, 743 F.2d at 1333. If true, Colstrip's claims represent substantial damages to a Montana resident, and the economic impact—totaling over $9 million—has certainly been felt here. *See Rocke v. Canadian Auto. Sport Club*, 660 F.2d 395, 399 (9th Cir. 1981).

Fifth, "A court sitting in the district where the injury occurred and where witnesses are located ordinarily will be the most efficient forum." *Raffaele*, 707 F.2d at 399. The injury occurred in Montana, and many witnesses will probably be located here. However, as JBED's repairs occurred in Missouri, witnesses and evidence are probably located there as well.

17

Sixth, Montana certainly provides Colstrip the most convenient forum for seeking relief. Both Colstrip and JBED are corporate entities capable of prosecuting or defending the suit in either state. Therefore, the Court affords this factor little weight.

Finally, Missouri is an alternative forum to resolve this dispute. The Court also affords this factor little weight.

On balance, these factors do not establish a compelling case that exercising personal jurisdiction over JBED would be unreasonable. Although Colstrip only alleges a single contact between JBED and Montana, JBED's deliberate conduct—repairing a rotor it allegedly knew to be Colstrip's and shipping that rotor back to Montana—shows JBED purposefully directed its actions to Montana and "purposefully invoked the benefits and protections of [Montana's] laws." *See Burger King*, 471 U.S. at 482. Colstrip's negligence claim arose out of that conduct. Finally, exercise of jurisdiction is reasonable because of JBED's conduct, Montana's interest in resolving the dispute, and because JBED has not otherwise presented a compelling case that the exercise of jurisdiction would be unreasonable.

## IV. Conclusion

The Court disagrees with Judge Cavan's recommendation to grant JBED's motion to dismiss for lack of personal jurisdiction. Colstrip's negligence claim

18

accrued in Montana because the injury-causing event—the rotor's failure—occurred here, which satisfies Montana's long-arm statute. M. R. Civ. P. 4(b)(1)(B). Furthermore, exercising personal jurisdiction over JBED is reasonable and comports with due process. Accordingly,

**IT IS HEARBY ORDERED**:

1. The Court adopts Judge Cavan's Findings and Recommendations in part but declines to adopt Judge Cavan's recommendation to grant JBED's Motion to Dismiss Amended Complaint for Lack of Personal Jurisdiction (Doc. 23).

2. JBED's Motion to Dismiss for Lack of Jurisdiction (Doc. 5) is DENIED as moot.

3. JBED's Motion to Dismiss Amended Complaint for Lack of Personal Jurisdiction (Doc. 23) is DENIED.

4. This case is referred back to Judge Cavan for further proceedings consistent with this order.

The Clerk of Court shall notify counsel of this order.

DATED this 30th day of September, 2019.

*Susan P. Watters*
SUSAN P. WATTERS
U.S. DISTRICT COURT JUDGE